* * * * * * * * * * *
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and argument before the Full Commission. The appealing party has shown good grounds to reconsider the evidence and upon reconsideration, the Full Commission reverses the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to the North Carolina Worker's Compensation Act.
2. In November 2003, an employment relationship existed between plaintiff and defendant-employer. *Page 2 
3. Defendant-employer is a duly qualified self-insured.
4. Plaintiff's average weekly wage was $659.27.
5. Plaintiff alleges an injury date of November 10, 2003.
6. Plaintiff has not missed any time from work.
7. Documents stipulated into evidence include the following:
 a. Stipulated Exhibit No. 1: Industrial Commission Forms 18, 19, 33, 33R and Supplement 33R;
 b. Stipulated Exhibit No. 2: Plaintiff's Medical Records;
 b. Stipulated Exhibit No. 3: Plaintiff's Answer to Defendant's First Set of Interrogatories to Plaintiff;
 c. Stipulated Exhibit No. 4: City of Charlotte Job Description for Workers' Compensation Claims Adjuster;
 d. Stipulated Exhibit No. 5: Notes from Ergo Assessment for Pamela Stamps; and
 e. Stipulated Exhibit No. 6: Video of Employee-Plaintiff describing her job duties.
8. Defendant's Exhibit No. 1: Plaintiff's personnel file was received into evidence.
9. Plaintiff's Exhibit No. 1: List of departments handled by plaintiff was received into evidence.
10. Issues for decision include:
 a. To what benefits, if any, is plaintiff entitled under the Workers' Compensation Act? *Page 3 
 b. To what medical treatment, if any, is plaintiff entitled under the Workers' Compensation Act?
 c. Does the plaintiff have a compensable claim?
 d. If so, is the last injurious exposure with a different employer?
 * * * * * * * * * * *
Based upon the competent evidence of record herein, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 37 years old and employed with St. Paul Travelers as an insurance adjuster earning $45,000.00 a year. Plaintiff's job with St. Paul Travelers requires her to handle workers' compensation claims, which involves talking on the telephone, using a calculator, taking notes, and typing notes on a computer. Plaintiff has a bachelor's degree from Southern Mississippi University.
2. Prior to her job with St. Paul Travelers, plaintiff worked for defendant-employer from August 2002 through March 26, 2004 and earned approximately $34,000.00 a year. Plaintiff's job was that of a claims representative for workers' compensation claims, which involved talking on the phone, using a 10-key adding machine and typing notes, recorded statements and medical information on the computer. Plaintiff estimated that she typed between six and seven hours a day. Plaintiff's supervisor, Melinda File, estimated that typing was roughly 50% of the job, occupying approximately four hours a day.
3. During plaintiff's employment with defendant-employer, an ergonomic assessment was performed for plaintiff's workstation. As a result of the assessment, plaintiff's workstation was modified to some degree. *Page 4 
4. At the hearing before the Deputy Commissioner, plaintiff testified that she began to experience numbness and pain in her arms in November 2003, which she reported to her supervisor, Melinda File.
5. On November 24, 2003, plaintiff presented to Dr. Warren Burrows, a specialist in hand surgery. At that visit, plaintiff complained of bilateral numbness and discomfort in both hands, more prominent at night. Plaintiff reported an increase in her symptoms during the two weeks prior to the visit and also complained of throbbing pain in her elbow and some pain in her shoulder.
6. Dr. Burrows' examination was essentially normal as were the x-rays that were taken. Dr. Burrows diagnosed plaintiff as having tendonitis of her right and left hand, prescribed Naprosin and instructed plaintiff to apply moist heat to her extremities.
7. On December 11, 2003, plaintiff again presented to Dr. Burrows with continued complaints of throbbing pain in her elbow and some pain in her shoulder. Dr. Burrows prescribed Neurontin.
8. On December 16, 2003, plaintiff presented to Dr. James Boatright, an orthopedic surgeon with a specialty in hand surgery. Dr. Boatright examined plaintiff on two occasions. When Dr. Boatright first saw plaintiff she complained of symptoms in both upper extremities with the left being worse. Dr. Boatright performed a physical examination of plaintiff that was essentially normal.
9. Dr. Boatright ordered median nerve and ulnar nerve conduction studies, which were normal. Dr. Boatright diagnosed plaintiff as having myofascitis, which is a soreness or inflammation and tenderness in the muscles of her upper extremities. Dr. Boatright prescribed physical therapy. *Page 5 
10. At plaintiff's March 1, 2004, appointment with Dr. Burrows, she reported that her symptoms continued and she had a burning sensation in both her right and left wrist, tingling in her fingers and aching pain in the base of her thumb. Dr. Burrows noted that Dr. Boatright, another hand surgeon in Charlotte had also seen plaintiff and had performed nerve conduction studies that were normal. Dr. Burrows' diagnosis remained the same; however, he opined that plaintiff might have some mild neuropraxia in addition to the tendonitis. Dr. Burrows encouraged plaintiff to take Neurotin and to start physical therapy.
11. Plaintiff's last visit to Dr. Burrows was on March 15, 2004. At that visit, plaintiff felt that the medicine was beneficial. She brought her nerve conduction studies that Dr. Boatright had performed at the Miller Clinic, which were normal. Dr. Burrows again encouraged plaintiff to continue physical therapy. His final diagnosis was tendonitis and neuropraxia.
12. On the issue of causation, and relying on plaintiff's report of the history of her job duties, Dr. Burrows opined that plaintiff's job with defendant-employer could have caused or at least contributed to her symptoms of numbness and tingling and aching pain and to his diagnosis of tendonitis and neuropraxia, if plaintiff did indeed continuously type for six to seven hours a day as she reported.
13. In his deposition testimony on the issue of causation, and relying on plaintiff's report of the history of her job duties, Dr. James Boatright opined that plaintiff's work with defendant-employer may have contributed to her bilateral upper extremity symptoms, assuming plaintiff was typing six to seven hours a day with both hands as she reported.
14. Dr. Burrows further opined that if one only considers the general working population, he did not think plaintiff's job placed her at an increased risk of developing *Page 6 
tendonitis and neuropraxia. However, if the population at large were considered, including non-working people, the aged and children, Dr. Burrows opined that plaintiff would be at some increased risk, assuming she were typing six to seven hours as she reported.
15. Dr. Boatright did not have an opinion as to whether plaintiff's work activities placed her at a greater risk of developing the symptoms for which she was treated than members of the general public at large.
16. The greater weight of the expert medical testimony is insufficient to establish that plaintiff's employment with defendant-employer placed her at an increased risk of contracting tendonitis and neuropraxia, or that said employment was a significant causal or aggravating factor in plaintiff's tendonitis and neuropraxia.
17. At the hearing before the Deputy Commissioner, Melinda Lynch File, the workers' compensation claims manager for defendant-employer and plaintiff's supervisor testified on plaintiff's job duties. Ms. File has worked in the area of workers' compensation claims for approximately 19 years. Ms. File testified that in a normal day, plaintiff would type approximately four hours at the maximum.
18. Although plaintiff testified that she is currently employed with St. Paul Travelers as a claims representative, there is insufficient evidence in the record to find that plaintiff does the constant, six to seven hours of typing she testified that she performed with defendant-employer. On the issue of the amount and extent of typing performed by plaintiff, the undersigned give greater weight to the testimony of Ms. File that indicates plaintiff typed for approximately four hours per day and that it was not constant.
19. On the issue of last injurious exposure, Dr. Burrows opined that if plaintiff continues to have symptoms and is performing the same work with her current employer, St. *Page 7 
Paul Travelers, there is a continuation of the aggravating factors. Dr. Boatright opined that plaintiff's work with St. Paul Travelers potentially could augment her symptoms. Both doctors testified to causation resulting from 6 to 7 hours of constant typing; however, on cross-examination, defense counsel did not qualify the amount of typing that plaintiff does with St. Paul Travelers. Therefore, the Full Commission finds that there is insufficient evidence of record to support an argument of last injurious exposure.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. An occupational disease is defined as any disease "which is proven to be due to causes and conditions which are characteristic of and peculiar to a particular trade, occupation or employment, but excluding all ordinary diseases of life to which the general public is equally exposed outside of employment." N.C. Gen. Stat. § 97-53(13). "A disease is `characteristic' of a profession when there is a recognizable link between the nature of the job and an increased risk of contracting the disease in question." Booker v. Duke Medical Center, 297 N.C. 458, 472,256 S.E.2d 189, 198 (1979). "[O]rdinary diseases of life to which the general public is exposed equally with workers in the particular trade or occupation are excluded." Rutledge v. Tultex Corp., 308 N.C. 85, 93,301 S.E.2d 359, 365 (1983).
2. In order to prove the elements of N.C. Gen. Stat. § 97-53(13), an employee must demonstrate that, "as a matter of fact, the employment exposed the worker to a greater risk of contracting the disease than the public generally." Id. at 93-94, 301 S.E.2d at 365. In addition, *Page 8 
"the final requirement in establishing a compensable claim under subsection (13) is proof of causation." Booker, 297 N.C. at 475,256 S.E.2d at 200.
3. To establish the causation element, an employee must prove that the employment "significantly contributed to, or was a significant causal factor in, the disease's development." Rutledge, 308 N.C. at 101,301 S.E.2d at 369. Although Drs. Burrows and Boatright testified that plaintiff's employment could have or may have caused or at least contributed to plaintiff's tendonitis and neuropraxia, the medical evidence produced raises no more than a possibility that the stated injury was produced by the stated cause. In such a case, the Industrial Commission has every right, and indeed the obligation, to refuse to consider that evidence as sufficient to support an award. Phillips v.U.S. Air, Inc., 463 S.E.2d 259, 120 N.C.APP. 538 (1995).
4. Plaintiff has failed to meet the required burden of proof to establish a claim for occupational disease under the North Carolina Workers' Compensation Act. N.C. Gen. Stat. § 97-53(13).
 * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Under the law, plaintiff's claim for workers' compensation benefits must be, and is hereby denied.
2. Each side shall pay its own costs.
 This the ___ day of December 2007. *Page 9 
S/ ______________________ PAMELA T. YOUNG CHAIR
CONCURRING:
S/ ______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
S/ ______________________ DIANNE C. SELLERS COMMISSIONER